IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CURTIS LEE WATSON,

        Petitioner,

  v.                                                      Civil Action No. 2:16cv76
                                                          (Judge Bailey)

WARDEN – FCI HAZELTON,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On September 19, 2016, the *pro se* Petitioner, Curtis Lee Watson, an inmate at FCI Hazelton in Bruceton Mills, West Virginia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging a decision of the United States Parole Commission ("USPC"). ECF No. 1. The Clerk of Court issued a Notice of Deficient Pleading. ECF No. 3. On September 26, 2016, Watson filed a motion to proceed *in forma pauperis* ("IFP") and a copy of his Prisoner Trust Fund Account Report ("PTAR") with its Ledger Sheets. ECF Nos. 5 & 6. By Order entered September 28, 2016, Watson was granted permission to proceed as a pauper and the five dollar filing fee was waived. ECF No. 7.

The undersigned conducted a preliminary review on October 5, 2016, and determined that summary dismissal was not appropriate at that time. Accordingly, a show cause order was entered. ECF No. 9. After being granted an extension of time, on November 23, 2016, the Respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support and a motion to file unredacted documents under seal. ECF Nos. 14,

15 & 16.  Because Watson was proceeding *pro se*, on November 28, 2016, a Roseboro[1] Notice was issued and the motion to seal was granted.  ECF Nos. 17 & 18.  On December 12, 2016, Watson filed his response in opposition.  ECF No. 21.  By Order entered March 2, 2017, the Warden was directed to refile certain pleadings.  ECF No. 22.  On March 3, 2017 and again on March 6, 2017, the Warden filed the requested pleadings.  ECF Nos. 23, 24, & 25.  On March 13, 2017, Petitioner filed a response in opposition.  ECF No. 27.

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, *et seq.,* is ripe for review.

## II. Facts

On August 10, 1978, in the Superior Court for the District of Columbia, Petitioner was sentenced to an aggregate term of 30 years to life for assault with intent to kill; carrying a pistol without a license; first degree murder while armed; first degree burglary while armed (two counts); and assault while armed. See Superior Court of the District of Columbia Judgment and Commitment Order, ECF No. 15-1 at 2 - 3 and D.C. Department of Corrections ("D.O.C.") "Face Sheet No. 2, Id. at 4 – 5. Petitioner's parole eligibility date was initially computed by the D.C. D.O.C. to be March 25, 2005. Id. at 5.

However, while Petitioner was in the custody of the D.C. D.O.C., at Lorton Penitentiary in the Eastern District of Virginia, he escaped on August 30, 1988. He remained on escape status until October 30, 1995, or approximately seven years and two months. Id. at 15; see also Dec. 7, 2007 Sentence Monitoring Computation Data, id. at 29 ("2,618 days total inoperative time.") Petitioner received a federal one-year consecutive sentence for this escape. Id. at 15 and

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

Sentence Monitoring Computation Data, id. at 6 ("Remarks: Federal Sentence Docket 1:88cr00201-001, 12 months consecutive.").[2]

In 1998, after the District of Columbia Board of Parole was abolished by Congress, and the Lorton Reformatory (where D.C. prisoners had been confined) was closed, Petitioner was transferred into custody of the Federal Bureau of Prisons ("BOP"). See Declaration of Patricia Kitka, Correctional Programs Specialist, BOP Designation and Sentence Computation Center ("Ditka Decl.") ECF No. 25, ¶ 10 at 4. As a result of this transfer, Petitioner also came within the jurisdiction of the USPC, and the BOP became responsible for computing Petitioner's sentence. The BOP also computed Petitioner's aggregate sentence as 30 years to life. See Oct. 7, 2004 Sentence Monitoring Computation Data, Id. at 8 ("total term in effect = life" and "aggregated minimum term = 30 years.") That computation showed a "parole eligibility" date of February 25, 2005, representing the date on which Petitioner would have served his minimum term in full, and therefore, the earliest date upon which Petitioner could be released on parole. Id.

In anticipation of Petitioner's upcoming eligibility date, on November 1, 2004, the USPC conducted a parole hearing to determine whether it deemed him suitable for release on parole. See Hearing Summary, id. at 9 – 11. Following that hearing, the USPC denied parole, and ordered that Petitioner serve an additional three years to a reconsideration hearing in November, 2007. See Notice of Action, id. at 12 – 14.

On October 29, 2007, the USPC conducted a reconsideration hearing for Petitioner. See Hearing Summary, id. 15 – 17. Following this hearing, in a November 20, 2007 notice of action,

---

[2] For whatever reason, the BOP's earlier sentence computation failed to compute Petitioner's escape status time as inoperative time. *Cf.* Oct. 7, 2004 Sentence Monitoring Computation Data, id. at 8 ("parole eligibility 02-25-2005") and Dec. 7, 2007 2004 Sentence Monitoring Computation Data, id. at 29 ("parole eligibility 05-27-2012").

the USPC ordered "parole effective December 9, 2007 after the service of 353 months" to begin custody on the consecutive 12-month term. Id. at 25.

Following the USPC's November 20, 2007 notice of action, however, the BOP re-computed Petitioner's sentence, finally correctly computing the time he was in escape status as inoperative time; i.e., time that did *not* count towards service of his sentence. This resulted in a re-computation of Petitioner's parole eligibility date as May 27, 2012.[3] See Dec. 7, 2007 Sentence Monitoring Computation Data, id. at 29 ("Parole Eligibility 05-27-2012.").

As a result of the re-computation of Petitioner's sentence, on December 18, 2007, the USPC issued a notice of action, voiding its November 20, 2007 notice of action that had granted Petitioner a parole release, and provided the following reasons:

> The Bureau of Prisons has determined that you are not eligible for parole until May 27, 2012. Thus, you were not eligible for the initial hearing that was conducted October 29, 2007 and the decision resulting from that hearing is hereby voided. You will be scheduled for a new initial hearing within 9 months of your new parole eligibility date.

Dec. 18, 2007 Notice of Action, id. at 31.

The USPC conducted a new initial hearing on October 21, 2011, in advance of Petitioner's May 27, 2012 parole eligibility date. See Hearing Summary, id. at 32 - 36. Afterwards, the USPC denied parole and ordered a reconsideration hearing in three years, in October, 2014. See Notice of Action, id. at 43 – 45.

For reasons not disclosed, when it came time for Petitioner to apply for the reconsideration hearing, which the USPC was prepared to conduct in September, 2014, Petitioner waived that hearing. See Parole Form I-24, id. at 46 ("Waiver of Parole/Parole

---

[3] Petitioner was in escape status for about 7 years and 2 months, thus, the addition of that amount of time to his previously-computed eligibility date of 2/25/2005 yields a date about 7 years, 2 months later.

4

Hearing: Inmate Watson stated he wishes to waive his hearing. However, he refused to sign this form indicating so.") On May 4, 2016, Petitioner applied again for parole, for a docket to be conducted the last week of September, 2016. See Parole Form I-24, id. at 48. However, on September 26, 2016, again for reasons unknown, he waived his parole hearing again. See Parole Form I-24, id. at 50.

Petitioner has also earned 30 days D.C. Educational Good Time ("DCEGT") in accordance with D.C. Code Section 24-429; therefore, his parole eligibility date has been changed from May 27, 2012 to April 27, 2012. See Ditka Decl. ECF No. 25, ¶ 19 at 6; see also id. at 8.

### III. Contentions of the Parties

**A. The Petition**

Petitioner ostensibly raises two claims; however, the second does not constitute a claim for relief.[4]  Accordingly, Petitioner's original Ground One claim has been divided into two claims, reworded and reordered for clarity.

1) Petitioner was granted parole on his 1978 D.C. Code convictions in 2007, to begin serving his one-year sentence for his escape conviction in the Eastern District of Virginia, but the Bureau of Prisons ("BOP") and the USPC have held him for parole hearings for the past 18 years and will not release him. ECF No. 1 at 5.

2) The USPC's conversion of his D.C. Code sentence into a sentence with a release governed by the USPC is a violation of the United States Constitution's ex post facto clause, and has resulted in his over-detention. Id.

Petitioner appears to contend that he has exhausted his administrative remedies.  Id. at 7 – 8.

---

[4] Petitioner's second claim was that that the December 28, 2007 Order from the United States District Court for Eastern District of Virginia (attached to his petition as ECF No. 1-1) was supposed to have been placed in his administrative record but was ignored.

As relief, he requests that the Court "issue the immediate release!" Id. at 8.

**B. Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment**

Respondent argues that the petition should be dismissed or summary judgment granted in its favor because the Petitioner's claims lack merit and/or are moot. ECF No. 15 at 7 – 10.

**C. Petitioner's Response in Opposition**

Petitioner reiterates his arguments and attempts to refute the Respondent's on the same. Further, he raises several new issues, most of which are wholly inconsequential to the legal analysis of his habeas claims, such as the fact that he is elderly,[5] has not been provided with good medical care inside prison or transportation to outside medical providers, and has therefore lost the vision in one eye. ECF No. 21-1 at 2.

**D. Petitioner's Second Response in Opposition (after Respondent refiled his dispositive motion and response)**

Petitioner provides more argument in support of his claims, albeit confusing, disjointed, and often contradictory argument, again attempting to refute the Respondent's arguments on the same. He also raises new allegations, that his original D.C. "old law" sentence was calculated "to be served at and under 65%" and not a minimum of thirty years [ECF No. 27 at 1] and that the "old law" never had mandatory parole. Id. He again insists that his sentence for his D.C. crimes should have ended in 2007 when the Eastern District of Virginia sentence for the for the escape should have commenced, on December 9, 2007. Id. at 2. He contends that although "it has not been filed in this court for this proceeding[,]" in 2010, the United States Department of Justice ("DOJ") issued a memo finding that he had never been charged with any murder under the D.C. Code, and thus this court did not have the authority to hear this issue or review the DOJ's memo.

---

[5] At the time that the November 22, 2016 Public Information Inmate Data was prepared, Petitioner was 72 years old. See ECF No. 25 at 8.

He challenges the additional seven year two month time that was added to his sentence for the time spent on escape, arguing that "D.C. had no provision for inoperable time and the federal prosecutor never asked nor stated any of this conduct when the plea [for the escape] was offered and accepted." Id.

Attached to the response are copies of four Orders entered in In re Curtis Lee Watson, Case No. 14-5049, a petition for writ of mandamus he filed in the United States Court of Appeals for the District of Columbia Circuit: a July 11, 2014 Order directing that the case be held in abeyance, pending the court's resolution of Daniel v. Fulwood, 766 F.3d 57 4 (D.C. Cir. 2014), regarding whether the USPC's application of its own parole guidelines rather than the 1972 District of Columbia regulations in effect at the time of prisoners' offenses violated the ex post facto clause [ECF No. 27-5]; a copy of a November 7, 2014 Order returning the case to the active docket; a copy of a November 23, 2015 Order directing Watson to pay the full appellate filing fee, because he had accumulated three or more strikes for filing at least three civil actions that were dismissed as frivolous, malicious, or for the failure to state a claim [ECF No. 27-7]; and a copy of a June 6, 2016 Order dismissing his motion for release for failure to prosecute, for his failure to pay the appellate filing fee. ECF No. 27-2. He also attaches a copy of a Time Line of Sentencing Laws for D.C. Code Sentences [ECF No. 27-3] and a one-page excerpt from P5880.33 District of Columbia Sentence Computation Manual. ECF No. 27-4. Further, he attaches a June 3, 1987 Memorandum to Chief Judge Ugast from one Bill Erhardt, regarding Parole Eligibility Under Bill 6-505. ECF No. 27-6. Finally, he attaches a copy of a November 10, 2015 letter from Washington Lawyers' Committee to him, regarding the Daniel v. Fulwood case, the possibility that Petitioner might be eligible to receive a new parole hearing using the 1972

DC Board of Parole Guidelines, and noting that Petitioner had previously contacted them about the issue. ECF No. 27-9.

### IV. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible

8

on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When, as here, a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### V. Analysis

The undersigned prefaces his analysis by declaring that Watson's claims are, in places, so unclearly stated that they are difficult to sort. As noted in the June 26, 2012 Memorandum Opinion of the United States District Court for the District of Columbia attached to Watson's petition, "[i]t is no easy task to decipher the claims plaintiff presents." ECF No. 1-2 at 4.

Prior to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2244 authorized dismissal of a successive habeas petition that presented "no new grounds not heretofore presented and determined." McClesky v. Zant, 499 U.S. 467, 483 (1991). Prior to its amendment through AEDPA, § 2244(a) was applied to bar successive habeas petitions regarding challenges to actions of the USPC. See, e.g., Glumb v. Honstead, 891 F.2d

10

872, 873 (11th Cir. 1990); Poyner v. U.S. Parole Comm'n, 878 F.2d 275, 277 (9th Cir. 1989); and Sacco v. U.S. Parole Comm'n, 639 F.2d 441, 442-43 (8th Cir. 1981).

As amended by AEDPA, § 2244(a) now provides:

No circuit or district judge shall be required to entertain an application for writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for writ of habeas corpus, except as governed in section 2255.

A few circuit and district courts have held that § 2244(a) bars a subsequent § 2241 as a successive petition where the grounds raised in the subsequent petition were denied in a prior § 2241 action. See Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998); Chambers v. United States, 106 F.3d 472, 475 (2nd Cir. 1997); Byrd v. Gillis, 1997 WL 698157, at *1 (E.D. Pa. Nov. 5, 1997). For a petition to be barred as successive under this provision, the same claims must have been raised and adjudicated on the merits in the petitioner's prior habeas proceedings. Kuhlmann v. Wilson, 477 U.S. 436, 444 n.6 (1986) (plurality opinion). Under the abuse-of-the-writ doctrine, a court may dismiss a subsequent petition when "a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that disentitles him to the relief he seeks." Id. Moreover, federal courts have concluded that notwithstanding any limitations on § 2244(a), a successive identical habeas petition may be subject to dismissal as an abuse of the writ. See, e.g., Davis v. Fechtel, 150 F.3d 486, 491 (5th Cir. 1998) ("we need not determine whether the gate-keeping provisions of the AEDPA [apply to Petitioner's third § 2241 petition] because it clearly constitutes an abuse of the writ either under our pre—or post—AEDPA jurisprudence."); Shore v. Warden, Stateville Prison, 942 F.2d 1117, 1123 (7th Cir. 1991) (applying the law of the case doctrine to successive habeas petitions); Raulerson v. Wainwright, 753 F.2d 869, 875 (11th Cir.1985) (same); see also McCleskey v.

Zant, 499 U.S. 467, 482, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (recognizing that where a petitioner has filed successive habeas petitions in more than one district court, the dismissal of the first habeas petition is of "vital relevance" to later court determinations of whether to consider similar petitions). The Supreme Court has noted that the restrictions on successive petitions set forth in § 2244(a) "constitute a modified *res judicata* rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'" Felker v. Turpin, 518 U.S. 651, 664 (1996).

In 2009, while incarcerated at FCC Coleman in the Middle District of Florida, Petitioner filed two § 2241 petitions which were consolidated for disposition. In those petitions, Petitioner asserted that both his sentence and his parole eligibility date had been improperly calculated and that he was entitled to immediate release. See Watson v. Warden, FCC Coleman-USP I, 2012 U.S. Dist. LEXIS 190709, *6, (M.D. Fla. May 3, 2012). The District Court concluded that both Petitioner's D.C. sentence and parole eligibility date had been "properly computed." Id.

On appeal, Petitioner argued that "his 'old law sentences,' that is, the 1978 D.C. Superior Court sentences, were 'converted to a federal term of *life*.'" Watson v. Warden, FCC Coleman-USP I, 521 F. App'x 899, 903 (11th Cir. 2013). The Eleventh Circuit found that "[n]othing in the record supports Watson's claim that his indefinite aggregate term of thirty years to life has been converted by the BOP to a definite term of life." Id. Petitioner also claimed that he was only required to serve "19 years and 8 months," and that he was entitled to immediate release. Id. However, the Eleventh Circuit noted that Petitioner was required to serve, at a minimum, thirty (30) years of his D.C. aggregated sentence; that Petitioner had not completed that sentence; and that Petitioner had "yet to serve his consecutive twelve-month sentence for the 1996 escape conviction." Id.

12

Likewise, in another § 2241 petition filed in 2014 in this District in Case No. 1:14cv114, Petitioner alleged that he was being held illegally for parole hearings that "do not apply;" (N.D. W.Va. ECF No. 7 at 1)(1:14cv114); that the BOP converted his thirty-year term of imprisonment "into a federal life sentence – then mandated [his] release as only by the Federal Parole Commission." Id. at 5. He argued the parole did not apply to him; his rights were violated by "the complete cessation of D.C. good-time," and that he had "maxed out on this term (65%) or 19 years, and requested immediate release. Id. at 8. Watson's petition was denied as successive and as an abuse of the writ. (N.D. W.Va. ECF No. 31)(1:14cv114). By *per curiam* opinion, the Fourth Circuit Court of Appeals affirmed for the reasons stated by this court. (N.D. W.Va. ECF No. 38 at 2)(1:14cv114).

As noted above, here, Petitioner claims that he was granted parole on his D.C. Code aggregate sentence in 2007 to begin serving his one-year sentence for his escape conviction in the Eastern District of Virginia, but that the BOP and USPC have held him for parole hearings for the past 18 years and refuse to release him, and that he is entitled to immediate release. In his second response to the Respondent's dispositive motion, he also alleges that his original D.C. "old law" sentence was calculated "to be served at and under 65% and not a minimum of thirty years" and that the "old law" never had any mandatory parole." Further, he contends that although "it has not been filed in this court for this proceeding[,]" in 2010, the United States Department of Justice ("DOJ") issued a memo, finding that he had never been charged with any murder under the D.C. Code, thus this court had no authority to hear this issue or review the DOJ's memo. He challenges the additional seven years and two months added back into his sentence for the time spent on escape, because "D.C. had no provision for inoperable time and

the federal prosecutor never asked nor stated any of this conduct when the plea was offered and accepted."[6]

All of these claims amount to a claim that Petitioner's sentence was improperly calculated, claims that are identical to those already denied by this district, the Middle District of Florida, and the Eleventh Circuit when considering Petitioner's previous § 2241 petitions. Accordingly, the undersigned recommends that Petitioner's claims be denied and dismissed with prejudice as successive and as an abuse of the writ.

Petitioner also appears to assert that the USPC has no authority to deny him parole. Petitioner previously raised this claim against the USPC in the United States District Court for the District of Columbia. Watson v. U.S. Parole Comm'n, 869 F. Supp. 2d 145, 148-49 (D.D.C. 2012). In a memorandum opinion granting the USPSC's motion to dismiss, United States District Judge John Bates stated:

> It is well settled that the Commission "has had jurisdiction over parole matters of District of Columbia felons since August 1998." Ray v. U.S. Parole Comm'n, No. 11-2127, 2012 WL 252238, at *2 (D.D.C. Jan. 26, 2012) (citations omitted); see Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir. 1998) (discussing the transfer of parole jurisdiction for District of Columbia prisoners to the Commission). It may grant, deny, or revoke parole, and it may impose or modify conditions of parole for any felon who is eligible for parole or reparole under District of Columbia law. See D.C. Code § 24-131(a). The statutes under which the Commission operates "govern the execution of a judicially imposed sentence." Moore v. U.S. Parole Comm'n, No. 10-1987, 2011 WL 550003, at *1 (D.D.C. Feb. 10, 2011). The Commission is not a court; it merely exercises administrative authority over the execution of a sentence. See Maddox v. Elzie, 238 F.3d 437, 445 (D.C. Cir. 2001). Its actions neither usurp the authority of the

---

[6] It is apparent that Petitioner is already well aware that the grant of parole in 2007 was error, given that attached to his petition is a copy of a June 26, 2012 Memorandum Opinion from the United States District Court for the District of Columbia in Watson v. United States Parole Comm'n, 869 F. Supp. 2d 145, 2012 U.S. Dist. LEXIS 89181 (D.D.C. 2012), which clearly gives the timeline for the erroneous grant of, and then the voiding of the earlier parole date, noting that Plaintiff's sentence "stopped running while he was out-of-custody after his 1988 escape and did not begin again until his re-arrest in 1995," before concluding that Plaintiff was not eligible for parole until April 27, 2012. ECF No. 1-2 at 3.

>   sentencing court nor violate the separation of powers doctrine. See, e.g., Monroe
>   v. District of Columbia, No. 12-0558, 2012 WL 1229333, at *1 (D.D.C. Apr. 11,
>   2012).

Id. at 149. Accordingly, it is clear that Petitioner's claim that the USPC lacks the authority to deny him parole is without merit and should be denied.

Finally, Petitioner's claim that the USPC's conversion of his D.C. Code sentence into a sentence with a release governed by the USPC violates the ex post facto clause has also been repeatedly found to be without merit in at least three prior § 2241 petitions[7] and likewise constitutes an abuse of the writ. See Watson v. O'Brien, Case No. 1:14cv114 (N.D. W.Va. March 10, 2015) (noting that Watson had raised the same meritless ex post facto claim repeatedly and concluding that "Watson's ex post facto claim - - like the rest of his claims - - fails because it constitutes an abuse of the writ"); Watson v. Warden, FCC Coleman - USP I, 2015 U.S. Dist. LEXIS 853, *11 (M.D. Fla. Jan. 5, 2015)(concluding that "[Watson's] ex post facto claim is without merit" because "the application of the 2000 guidelines to [Watson's] parole does not create a significant risk of a longer period of incarceration than under the earlier regulations"); and Watson v. United States Parole Comm'n, 869 F. Supp. 2d 145, 150 (D.D.C. 2012) (concluding that Watson's ex post facto claim is "meritless" because "the Court cannot conclude that [Watson] would have fared better under a prior regime").

Accordingly, therefore, Watson's ex post facto claim –- like the rest of his claims – again fails, because it is successive and constitutes an abuse of the writ.

## VI. Recommendation

---

[7] Watson also raised the ex post facto claim in a civil rights case filed under 42 U.S.C. § 1983 in the United States District Court for the District of Columbia, Watson v. United States Parole Comm'n, 869 F. Supp. 2d 145, 2012 U.S. Dist. LEXIS 89181 (D.D.C. 2012), and attached a copy of the court's opinion to his petition. After noting that the relief Petitioner was seeking sounded in habeas, and not in civil rights, the court noted that Watson's ex post facto claim that the USPC had applied "later adopted laws that disadvantaged him" was "meritless" and that the court "cannot conclude that . . . [Watson] would have fared better under a prior regime." See ECF No. 1-2 at 7 - 8.

15

Based on the foregoing, the undersigned recommends that the Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 14] be **GRANTED,** and Petitioner's §2241 petition [ECF No. 1] be **DENIED** and **DISMISSED with prejudice.**

Any party may file, **within fourteen (14) days** after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to all counsel of record via electronic means.

DATED: April 5, 2017

    /s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE